On the briefs, we will take up Termine v. Hart. Termine v. Hart School District Good morning, Your Honors. Good morning. My name is Marcy Tiffany, and I'm here representing Asia Termine. It's a difficult name to pronounce. It's difficult. I didn't understand you. I'm sorry? You said something. It's difficult. It's difficult to pronounce. It's Asia Termine, and it's not pronounced anything like it's spelled. I see. It's Termine. All right. Did you pronounce Asia? Asia. I believe there's a rock and roll song somewhere involved. With me at counsel table is Stephen Weiner. I was rereading Vashon Island in preparation for this argument, and it struck me just how completely it undermines the district court's reasoning in this case. Vashon Island is absolutely on all fours with our case. In Vashon Island, at page 1121, we learn that after the student transferred into the new school district, the district offered an interim placement that the parent refused to accept. And moreover, the parent was so upset, she refused to send the child to school. The school district then filed for due process to seek a determination that its interim placement offer was appropriate. Now, if you'll turn to page 1133 of Vashon Island, the Court states that one issue on appeal was whether the school district violated the stay put, while this dispute over interim placement was pending. Ms. Tiffany, I expect your opponent's going to tell us that there is a difference, that one step was skipped in this case that was not skipped in Vashon. Do you think that might be what he's going to argue? He actually argued that in his supplemental reply. Do you agree? No. For two reasons. One is that you don't have to go and exhaust in order to get a stay put. The stay put is the one exception to exhaustion. You can go directly into Federal court and get a stay put order. And this is a stay put order. The second thing is, as the district court pointed out, we did exhaust. We went to the hearing office first and asked for a stay put order there and didn't get it. So we came into Federal court and the court talks about, the district court talks about, is this an appeal or is this an original action? And ultimately decided it didn't matter because this was squarely presented and it's a legal issue. There's no factual dispute here. This is a legal issue in the first instance. And that is, where is the stay put? How do you determine the stay put? In the due process hearing, they determined the very same issue that you're arguing here. Is that right? There were two due process hearings, and it does get confusing. There was an initial going into due process to ask for a stay put. And that was a stay put to be in place while the other dispute as to where the appropriate interim placement should be was pending. So this is a stay put while we're disputing interim placement. We didn't agree on interim placement, so we're entitled to a stay put. The second action, whether or not the interim placement was appropriate, was proceeding on, and that's the second due process case. But what happened in that case is irrelevant to whether or not we should have had a stay put while it was determined. That's the whole point of a stay put. The stay put is in place pending the outcome of the dispute. The hearing office could agree with you the interim placement was appropriate or say it wasn't. And that, in fact, is on appeal. We think that what really happened, by the way, in that due process case and why we're appealing, is that the hearing office has interpreted 56325 to mean something entirely different from what Letter to Campbell says. So that's the basis for the appeal there. But be that as it may, as the district court also found, it was irrelevant. You don't look at that determination. Well, it doesn't quite answer my question. That is that they did in the due process hearing determine the same issue that is before us today. Is that not right? No. They found first that it was not that the school district didn't act fast enough so that for those first few days they were in violation for not having determined the stay put. They then determined that the stay put for the rest of the days was okay. They agreed with the district court on that. So that's the same issue, is it not? Well, no, Your Honor, it isn't. That's the issue as to whether the interim placement was appropriate. The issue here is what was the stay put while that interim placement was being decided upon. Is that the only issue in front of us now is just what was the appropriate stay put? Absolutely. All right. Has Hart, Vashon talks about the stay put being the IEP at the time of the transfer. Yes. But it also has language where it says unless it is clearly impossible to do so. Yes. Is Hart arguing, has it argued that it's clearly impossible for Aja to stay at Westmark? No. In fact, that would have been Hart's burden here, to argue it's not possible, therefore, this comparable placement, and Hart, you know, gives us tables and charts showing how comparable it is. But you have to first show that it was impossible to implement the stay put at the IEP, as the IEP was exactly written, which was Westmark. Well, so what I'm getting at is Vashon Island wasn't issued at this time. That's correct. Is this something that needs to be remanded back to Judge Wilson for him to have a determination on whether it was possible? Whether it was possible. Your Honor, I believe that the record as it exists makes it possible for this Court to make that determination for two reasons. One is Hart has never argued, and this issue was raised. We argued letter to Campbell below into the district court. Hart had an opportunity to argue it was not possible. Has never argued that, even below. Secondly, Hart is currently maintaining Aja at Westmark as a stay put. We know that. That's where her stay put currently is. So if it's possible now, how could it not have been possible then? And, you know, how did that come about? Did Aja still at Westmark, given the nature of this case? Well, the way it happened is this second due process hearing, where one of the issues was, was the interim placement appropriate? The other issue is, what did they make a permanent placement offer? Because if you'll remember, under 56325, they not only are required to offer an interim placement for 15 days, or sorry, for 30 days, but then they have to offer a permanent placement within that time frame. They didn't do it, according to the hearing office. Because they didn't do it, there was no offer of permanent placement. Therefore, the parent was justified in keeping the child in a private placement. Now, once that decision is rendered, that becomes her stay put from there going forward. So Hart is currently her stay put because she was never offered an appropriate permanent placement. So is the Hart School District funding the cost of Aja being at Westmark right now, because it's the one that's obligated to maintain her? Yes, they are. If we were to say that this case were moved, hypothetically say that, you would still get every opportunity to get all the relief you want out of the other appeal. Is that not correct? Well, Your Honor, let me address that. Answer yes or no. The opportunity. No. Now why? Because we're only talking about money. We are talking about reimbursement. First of all, the decision, that due process decision that held that they didn't offer her a permanent placement and therefore formed the basis for a partial reimbursement. And it was only a partial reimbursement. Well, but you're appealing that. Well, actually, they're appealing that. We're appealing the part that says partial reimbursement. But they're also appealing if we lose and the Court says or, I'm sorry, if they prevail and the Court says, well, you know, let me back up. Well, you could lose here, too, you know. We could. But if it turns out that the district court says they did offer a permanent placement, so you're entitled to no reimbursement, we have no way of coming back and saying, well, but we should have been reimbursed for the entire period under a stay put. Now, this case is here first. Well, wait a second. So actually, Aja's parents are paying the cost of Westmark and seeking reimbursement. Aja's, well, as a footnote in the second due process case points out, Westmark Mrs. Turman has no money. So Westmark has been carrying this as a receivable. If we prevail here, the money will be paid to Westmark, which, by the way, deserves the money. They've been carrying this child. They educate disabled children. We want them to get the money. And it's important that they get it. So, yes, Westmark would get no money if we don't win here and we were to lose in the other case. And the cases that have been stayed below by Judge Wilson, which there's two of them, which ones are those? No, there's one case. One case stayed below. You'd get to come to us after Judge Wilson ruled if you were dissatisfied. Well, Your Honor, the stay put issue, though, would be dead at that point because the hearing office did not decide the stay put issue. They decided the interim placement issue. It's a different issue. Well, they decided both. They said that the stay put was proper for that period of time. No, Your Honor. They said the interim placement was proper for that period. And there's a difference, as we saw in Vashon Island, between an interim placement being appropriate and the stay put that you're entitled to while that's being decided. This is a different – it's a different theory. It's a different legal rationale for getting reimbursement. You know, whether or not, if they had held that the interim placement was appropriate or wasn't appropriate really doesn't impact where the stay put should be while they were making that determination. Well, in effect, when they said that the – there had been no permanent proper hearing in placement, then the child should be kept at Westmark. That's equivalent to a stay put, is it not? No, it isn't, Your Honor. That is a completely different legal theory that says that if you have not been offered an appropriate placement and, you know, the parent can, you know, therefore go out and find an appropriate placement. That's a different – that's a case called Buchanan that governs that. And that case says there's an equitable reimbursement, not an automatic injunction that requires you to be reimbursed, but an equitable reimbursement, and we can take various factors into consideration. This is not a stay put. Moreover, when they did that, they cut the reimbursement by half, which is why we're – one of the reasons why this case right now is not moved. If we had gotten the full relief there, then arguably it might be. But we didn't. We didn't get – we only got a half reimbursement. If we got the stay put, then, in fact, that case may end up being moved. Because what's the point of arguing over half versus whole? If you have the stay put, you have the stay put. Are you saying you're foreclosed from arguing the stay put issue in the other case on appeal? Yes, Your Honor. The stay put was not at issue there. And you're foreclosed from arguing it in this case? I believe we would be, because it was not – in fact, the hearing office said, look, I'm not touching the stay put. That's in Federal court. That was, you know, the other – the first due process system you went through, and then that's in Federal court. I'm not going there. I'm only going to focus on whether the interim placement was appropriate. The stay put wasn't an issue there. We don't get to argue it again. And moreover, you've gotten the benefit of Judge Wilson's view on the stay put. He's told you exactly what he thinks the stay put is. You know, a very long opinion. Yes, indeed. No, I didn't – I'm not quite following his comments in the stay order that – he says, this Court in Term 1 specifically did not reach an issue of concern, whether the interim placement affected by Hart District Court. I'm sorry. Can you tell me what page you're on, Your Honor? I'm looking at page 2 to 3, where he's commenting that he doubts your appeal here will be successful. And then he says he didn't reach the issue of Section 56325A. I'm still not sure what you're referring to. It's attached to, I believe, your – I said page 2 of the – Is this yours? Or maybe it's the one that was filed by Hart. No? Yes, it is. It's the exhibit to the supplemental. Right. Oh, that's the stay order. Right. I'm talking about the stay order, where he says he didn't reach this issue, and yet I thought that was one of the issues we're deciding in this case. Well, Your Honor, the reason he didn't reach the issue is because he took the position that there is no stay put while you're disputing interim placement. You can't dispute interim placement, so therefore, you can't get a stay put. That was his rationale. So therefore, he didn't have to look at whether the interim placement was appropriate or not. He held that whatever the school district offers as an interim placement automatically becomes the interim placement. There's no letter to Campbell, no test as to whether it was appropriate or not. And you can't dispute it because the Court said it made no sense to dispute it. But the Court didn't have Vashon Island. And Vashon Island is, you know, a classic case where they actually did dispute  and the Court said, yeah, and you get a stay put while you're disputing it. Now, if I could turn to letter to Campbell. Vashon Island teaches us that it's letter to Campbell that we look to to figure out what the stay put ought to be. And letter to Campbell has two alternatives if you can't agree on an interim. The first is you implement the existing IEP in full if it's possible. And the second is that you do a comparable placement. You come as close as you possibly can. Now, there's a distinction between those two, and it's a meaningful distinction. And I think to interpret letter to Campbell, we have to look back to section 1415J, which is the stay put provision. That's what this is all about. The stay put provision, 1415J, says you maintain the then current educational placement, which courts have consistently interpreted to mean the educational placement actually functioning at the time the dispute arose. Now, in many cases when a child changes school districts, that's not possible. You don't have an educational placement actually functioning at the time the dispute arose. This one is unique. It is a case where we do have an educational placement functioning. And I would note that the district court found as much. The district court's own opinion on page 15 said, if I analyze this under 1415J, the stay put is Westmark because it's the current educational placement. And then he went off on this other rationale that you don't get it, but, you know, you don't get a stay put. Now, in interpreting letter to Campbell, I have provided the Court with an additional citation to 20 U.S.C. 1406. And this is a rather unique provision. This provision specifically says Congress tells the secretary of education that you may not implement or publish in final form any regulation that would procedurally or substantively lessen the protections provided to children with disabilities under this Act. I would suggest that this requires that letter to Campbell, that first part of letter to Campbell, be interpreted absolutely consistently with 1415J, because to do less would be to lessen the stay put protections that the child is entitled under the Act. To summarize, we know that Fashion Island says you're entitled to a stay put. We know that Hart had the burden of showing it was not possible. And we know that, in fact, it was possible for the stay put to be at Westmark. For those reasons, we believe that there should be a remand, but the remand should direct that the appellant should win and that the stay put was at Westmark. All right. Thank you, counsel. And I don't know if I have any more time or not. You actually had about two minutes to apply.  Thank you. May it please the Court, Eric Green for the school district, and with me I have Stephen Groot. Thank you. Just briefly addressing some of the issues that were just discussed, we believe the issue before this Court is very similar to the issue that's adjudicated in the two appeals that were stayed. Pardon me, but I have to correct my colleague that there are two appeals below. Ms. Tereni appealed the, pardon me, appealed some of the findings in the CEHO's decision and the school district appealed the other findings. So there are two and they were then stayed. Pardon me, let me just get some more. While you're doing it, Mr. Green, I'm concerned that the problem here might be that what makes all the common sense in the world is not what the law says should be done. For example, if this was a music student and was attending a school district that didn't have a music program and the school district then arranged for private music lessons, if you moved to a district that did have a music program, the new school could say, we will give you the music lessons. You don't need to continue. We don't have to continue the private program because we can do it here. Now, you could take that same hypothetical and stick it on top of this case and say, we can give you everything you're getting in the private school. We don't have to continue. But the cases seem to say, and your opponent vigorously argues that they do say, that's not what we look to. We look to whether it is impossible for you to continue in the same school. And if it is possible, then you must. Now, is that the state of the law? Do you understand? No, actually, Your Honor, it's not. Johnson and Vachon actually both addressed this. And Vachon, at page 1133, the Court says, although the state put provision is meant to preserve the status quo, we recognize that when a student transfers to educational jurisdictions, the status quo no longer exists. There is no status quo. But isn't what they are referring to in the letter of Campbell as well is only in the case where there is a dispute as to the interim placement, which is that then you have to look at, well, the then current educational placement, and in this case, it would be Westmark. But if the parents agree, if Hart had presented them an interim placement at Hart, and they agreed to it, then that would be fine. Well, actually, in Vachon and in Johnson, the parent did not agree in both cases. In Johnson in particular, the parent did not agree that the services being provided by the alternative providers were appropriate. So they challenged them. And in Johnson, the Court said, quoting on page 1181, the new agency need not and probably could not provide the exact same educational program. They came out and said that in Johnson. And then in Vachon, where I was just reading, at 1133, they say they recognize that status quo no longer exists. This is why the district court got a dead bang right in this situation. There is no status quo when a parent chooses to relocate. Because whenever we relocate in this country, there are always changes. There's different taxes. There's different services provided. There are many changes. Many people choose to move from one neighborhood to another just for the school districts. And the ---- Kennedy. Well, Tiffany is going to say that. She's going to say that the school that she's attending happens to be equal distance. Right. It's not the question of the distance, because in reality, yes, it's true. But imagine, as Judge Wilson pointed out, imagine Ms. Termini chose to move to Sacramento. It wouldn't seem like a practical interpretation of the statutory scheme to require that the school district then transport Asia back and forth by Southwest Airlines every day from Westmark. And we don't think that that's what's required. And what Judge Wilson said is there's a practical reality when a student changes school districts that there's going to be some change. And what the legislature did in California is they enacted 56325 in order to fill this gap. And this gap and the compromise was, okay, you have an IEP, we're going to make sure that IEP is implemented, but only to the extent possible within existing resources. And I know my opponent is arguing strenuously that Letter to Campbell was right on point, but we know that Letter to Campbell never touched on this issue of a nonpublic school placement, and it was talking about the predecessor subversion of 56325. 56325 was amended because the problem that Letter to Campbell had was students were coming into a new school district and not getting any services, because the way 56325 was written, it says they may be provided an interim placement. So they said, well, that's not working. You've got to make, shall be provided an interim placement. It's then been construed for years by the Special Education Hearing Office to mean that it need not be the same location, et cetera. No, there's no evidence that the Office of Special Education Programs at the Federal level has ever had a problem with the Hart District, et cetera. So if I can step back for a second and say something. Appellants want to make it seem like there's this magical thing called stay put. And we build this whole IDEA around stay put. But that's not how it is. Stay put is supposed to further the IDEA. The whole idea was children were being either excluded from the public schools or being yanked from programs where there was an agreement. Here there's not a single case in which appellants can cite where funding for a nonpublic school placement is moved from one agency to another. And that's, again, because of the practical reality that there are different resources in different agencies. But coming back full circle, because Justice Fletcher, in my view, raised a very important issue here. The Special Education Hearing Office already adjudicated this issue of whether the interim placement was in conformity with the initial placement. That is on appeal before Judge Wilson and will ultimately make it back here. If this Court or Judge Wilson finds that, no, no, Hart, your program is not equivalent, your program is not good enough, they win. They get everything they want. But isn't that just the interim placement as opposed to the stay put? But it's the same thing. But it's not the same thing if different monies are involved. If we're talking about different time periods of reimbursement, how is it the same thing? Let me explain that. We've been funding the placement since July of 2002. That's going forward for complex reasons. So the only issue in dispute is October 2001 to June 2002, the exact same period covered by the CEHO decision. And my opponent will not disagree with that. It's the exact same period covered. So what they're saying effectively is don't let Judge Wilson decide the CEHO appeal, in which they found the placements were equivalent, trump that in advance without a record, even though we have a fully developed evidentiary record which we submit will show you not only that our placement is as good as Westmark, but far superior, far more credentialed teachers, more experienced teachers. It's not even close. They don't want you to see the record. The record is overwhelming. And the hearing officer, as you can see. But why would that be, if it's so much better? Why would they not even want us to see it? Because then they win. Right. But if you're saying it's all being paid for anyway, what are they winning? Well, the period from October 2001 to June 2002, before we start to – to July 2002, before we started paying for it. They want payment reimbursement from October 2001 to June 2002. That's the period covered by the State put. That's why that's relevant here. But it's not the same thing as the interim. It is the period of the interim placement addressed by the special education hearing office. They're the same period. So what happens is in October 2001, that's when the dispute starts. I'm sorry for being confused. But which period is not covered under any theory right at the moment that you're fighting about? Which period is not? Which time period is not being reimbursed? Not in dispute. They're not being reimbursed in dispute. Okay. They have not – yes, I'm sorry. They have not paid for the period from October 2001 to June 2002. A day is hard. Appellants have not paid. Nobody has paid Westmark for that period. Okay. Tell me that period again. October 2001 to June 2002. This is the exact period covered by the CEHO's decision. Okay. The exact coextensive. All right. And the CEHO apportioned it, said, okay, Hart, you were late by a week. You pay that week. Then you were okay for two weeks. You pay that. Then, Hart, you pay the rest. And what do we call this period of time? Is this the statehood, the interim? Well, this paints us back to the issue in the Wilson decision, which is that state – what happens when a child changes placement? Right. I mean, changes locations. And the answer is there's no more status quo. So the interim placement becomes the statehood. All right. So really, you're arguing – okay. You're really arguing there is no differentiation when there's a transfer between a statehood and an interim. What I'm saying from a practical standpoint, if this were at the beginning of the case when the preliminary injunction was sought and there was a danger that Asia was going to be removed, then we'd have a live controversy. And you could say, hey, you're going to remove her. We're not going to let her. There's irreparable harm. We've got issues. Now we're arguing about money. All you've got now in this case is we know after the fact. There's going to be a decision after the fact. Was Hart right or was Hart wrong? If Hart's wrong, we pay. If Hart's right, we don't pay. They want you to say, don't go to that. Don't address whether Hart was right or wrong. Order them to pay anyway. Now – and there's no reason for it. Now, of course, we would welcome a decision on this issue because it's an important issue about what happens when students transfer from nonpublic schools. This could happen throughout the state. You see, it's only if we accept your sort of rubric and your characterization of the structure of these statutes, which is Wilson's, that this case is mooted. If we were to decide – under your analysis – if we were to decide that that analysis is wrong, then there really is something at stake here, which is that period of money for the stay put period, which according to some people in this case doesn't exist. It's not really what's going on. Well, forgive me. I don't think it's accurate, and I'll tell you why. Because Wilson himself, Judge Wilson, didn't find the matter to be moot. So I don't think we could say that under Judge Wilson's theory the case is moot because he himself found it not. Well, but you're arguing it's moot under Judge Wilson's theory. I'm saying as a practical effect, this Court, the matter's going to be – I agree with your first statement more than I agree with your second statement. Well, the practical matter is that the dispositive issue that we're going through all these machinations on for stay put, like treating it this magical stay put, is ultimately to decide who was right in the end. And that's – But it's an interesting issue. Oh, it's a fascinating issue. No, I – Wilson, it's fascinating. And I'd like to argue the merits of – But it's an important issue. Very important. Right. And it does have real effects in this case. Very important. And that's why, if you don't mind, I'd love to argue the – I would like that, except that I don't understand why you keep saying this case is moot. What I'm saying is that the underlying issue, the practical – what we're really trying to grab onto in this case is, at the end of the day, who was right? Was the school district right that the interim placement they offered was substantially identical to the Westmore placement? Or Paul is correct that, in fact, they were not substantially identical. And if the school district is right, why should the school district be paying, in the end, for the placement? Because what will happen under those circumstances is it will encourage people to draw out litigation, et cetera, et cetera. That's what I'm saying as a practical matter. It may not technically be moot in the traditional sense. That's what I'm thinking. But the issues are so bundled up into each other that it makes sense to adjudicate the issue, because if, in the end, if they're right – and we argued this to Judge Wilson – in the end, if they're right, it moves out of disappeal, because if they end up proving that the interim placement was not in conformity with the IEP, then they get reimbursement for the entire period of time anyway. Mr. Green, it would help a portion of the Court if you would tell us what you see the bottom line of this case, what our decision should be. It will do two things. It will help Ms. Tiffany when she comes to rebut, and it will crystallize what you're – the point you're making.  Thank you, Your Honor. There are two separate points, and they're not necessarily, you know, coextensive or consistent with each other. One is that the purveyment of the issue that we're looking at is ultimately was the interim placement in conformity with the IEP. And if it was, that's the – that's what we're trying to find out at the end of the day. And so in that respect, one could say, hey, let's look and let's let the CEHO decision be appealed and consider that and review that and take that up on appeal. That's issue one. The second question is let's talk about what happens with a nonpublic school placement when a student changes from one location to another. That's a substantially important issue. That's of recurring importance throughout the State. We've got students that could go – you could be in a small school district of a thousand students, and they will not have the same resources as an LA Unified. And what's going to happen when that's – you know, that person, that student at that school district comes over to LA Unified? They say, look at all these fantastic programs. We can implement your – the music example. We can do the music program. Identically. Does the IDEA compel that we keep the student in the existing placement, be it a private school or even a public school? And the answer is there's a gap in the IDEA. The IDEA doesn't directly address that. The IDEA is not direct Federal regulation. It says, States, you want this money. Here's some things you have to do. And it gives a whole list of those things. It's in 1412 of 20 U.S.C. and 1415 of U.S.C. It doesn't come out and say, what do we do in this situation? What happened in Letter to Campbell, again, was students were going from one school district intrastate to another school district, sitting around for 30 days with no services, because the statute is then written, said, you may provide them an interim placement. OSEP, Office of Special Education Programs, says, okay, you've got to fix that. The State fixes it. It says now you must provide it in conformity with the IEP to the extent possible within existing resources. There's no problem. From that point forward, it's interpreted in California as not requiring the type of thing appellants are seeking in this case, and there's never been a problem with it. So what we would say is, as Judge Wilson points out at great length at pages 22 and following of this decision, is that the legislature of California permissibly filled in the gap. It's almost like Chevron deference, but it's not Chevron deference because it's the State. This isn't direct Federal regulation. It's the State. And they filled in this gap and they said, and Judge Wilson points out, this is a fair compromise. What do we do with a student who chooses to relocate? Are we going to take the student as the nonpublic school placement and keep it in perpetuity even if the student lives miles and miles and miles away? So I hope that's ‑‑ I know it's a little confusing because ultimately the bottom line is that I don't think the IDEA contemplated this exact scenario. They can't contemplate every possible permutation of a disagreement that will occur. That's why OSEP issued a letter to Campbell and they said, here's how we construe  Well, suppose we were to follow Bastion Island and its language that at least initially where there's a dispute, the school district must maintain the then current existing placement unless it's impossible. Has there been a showing of impossibility? Is there an argument as to impossibility in this case? Your Honor, I couldn't in good faith tell you it's impossible for a school district to write a check for $30,000. What I can tell you is there are 20,000 other students and 3,000 other special education students that Hart District has a duty to. And every student who we have fantastic resources to provide services to that we decide to take $30,000 and pay it to a private school takes away services from those children and those students. And it's not right. It's not fair, especially when it's been clearly established that we have those resources. And I don't think that the impossible ‑‑ you know, they're taking one word from Letter to Campbell, impossible, and Vashon, and they're saying They use it in Vashon because it suits the ‑‑ in Vashon ‑‑ Vashon, there was a unique program over at one school district. So they said, well, we can't do that exact program at the other school district. It seems to be a step worse, further, beyond Vashon Island to say, a $30,000 non‑public school placement, well, that's possible. This would have been possible. For $30,000 they could have created that program. And same thing at Campbell ‑‑ Johnson. In Johnson, they didn't require the same providers. If that's the correct instruction of letter to Campbell, then they would have ordered in Johnson, you provide the same providers for $30,000. For sure they would have been able to provide it. They talked about it was a private placement. So that can't be the right construction. Just in considering whether that would be the right construction or not, would there be a time period where maybe it would be a correct construction, say, some period, the initial period, before an interim placement is finally approved or a permanent placement is approved, where that would be a correct policy analysis? For the word impossible? Right. Just for ‑‑ if it were limited to a period of time during the course of the proceedings of the, you know, the statutory steps that the school district has to go through. What I would say, Your Honor, is, and it's a tricky situation, I would say that there could be a set of facts where a petitioner could go into a district court and say that there's something horribly dangerous and wrong about this interim placement and we want immediate emergency injunctive relief. I don't think as a general rule it would be. But I don't think the courts would be precluded from doing that. That's never been shown here. In fact, there's nothing, nothing in the record about any service available at Westmark that the Hart District couldn't provide equally well. And that's very telling. They just say it's a private school, we win. It's a private school, we win. And in fact, Your Honor, I was looking at these cases last night. If we look at the Knight v. District of Columbia case at page 1029, which was cited by Pellis, it says, and this is the D.C. Court of Appeals, we do not interpret either the act or our reading of it in Smith to hold that a public placement is inherently dissimilar to a private placement for the purpose of satisfying the school district's obligation to provide a, quote, similar placement on an interim basis. Now, they come right out and say what we're saying, which is that the fact that it's private, that doesn't ipso facto mean that it's not inconformity. So I have one minute left. If there are any further questions, I would be pleased to answer them. Otherwise, we really appreciate the Court's time on this matter. Thank you for a very good argument. Thank you very much. I have a lot to respond to. So little time. First, let me just revisit how a statehood works. The way a statehood works is school district proposes a new placement for the child. The law says, well, maybe that's an appropriate placement. Maybe it's not. We don't know yet. We have to have a hearing, due process. The parent doesn't agree. We have to have a due process to decide whether it's appropriate. And it is vitally important, it is unequivocal, that the child's education not be interrupted while the parents are fighting over whether or not this is an appropriate placement. So we keep the child in the statehood until it's determined that this is an appropriate placement. We don't yank the kid out of an appropriate placement, put them in an untested placement, and then try to figure out whether it's appropriate. That's the whole concept of the statehood. And what Mr. Green has argued is, well, you know, first we should figure out whether this is appropriate, and then we should figure out whether or not you get a stay put. Well, it doesn't work that way. You can continue that argument, and it's all right. But it's not what he's arguing. What he's saying is this. Surely you can keep the question is who pays? That's the only question so far as he's concerned, as I understand his argument. If the parents say no and the school board says yes, somebody's going to have to decide it. The child has to be somewhere while the decision is being made. The school board says, we think we're right. So put her in our identical placement. The parent says no. The school board says, OK. No, you've got a chance. You pay, and then you've got a chance to be reimbursed by us if you're right and we're wrong. And that's what this boils down to. It isn't necessarily yanking the child. It's who's going to pay, whether it's the parent or the school board. You're right, but that question is settled in the law. There's absolutely not one case that says that if the stay put is at a nonpublic school, the school district doesn't have to pay for it. Every case that is looked at, it says, of course, part of maintaining the stay put is paying for it, because if you don't pay for it and the parent can't afford it, you're depriving the child of that right to stay where they were. Now, let me address your question, Judge Ferris, because it was really an excellent question, the question about the music program. A disabled child's placement is a very complicated thing. It's determined by an IEP team. The team has to have certain members. You make these meetings. Sometimes they can go on forever. And you come up with what's an appropriate placement for this child. Now, part of what makes an educational placement is the location, the facilities, the teachers, the program. All of these things go into it. The school district now says, well, we've got something we think will work just as well. Well, the first point is they think. Maybe it will, but maybe it won't. We don't know. We still don't have a determination as to whether, in fact, what they offered her was appropriate. We believe it was not ever appropriate. That was never tested. What was the only thing that was addressed was whether it was comparable under the hearing office's determination of what 56325 means. Never has it been determined that it was appropriate. But you don't yank a child out of something that is appropriate, put them into an inappropriate, possibly inappropriate placement, and then go figure it out. All right, Counselor, you're well over your time. So thank you very much. It's a troublesome case, and you needn't worry. I think you both can guess we've spent some time trying to deal with the issues. And you've helped us. You've both given us all you can give us, I think. Thank you. Do you have something special you can say that you wanted to say that you're burning to tell us? The Chief will probably say you can do it if it's quick. Just one point. On this issue of cost. But if there be good. I'll do my best. On this issue of the cost, you know, that this is such a terrible, burdensome cost, nobody is going to interpret the word possible to suggest flying a child to San Francisco. Possible means what's possible within the scope of what school districts do. And all the time school districts place children in nonpublic schools. Hart, I'm sure, has a number of children there. Does the school district's resources have anything to do with what's possible and what's not? You know, Your Honor, the resource, the funding of school districts is a very complicated thing. It comes through the State. They get Federal money for this. No, but yes or no? No. All right. Because they will be adjusted. They get money for it. Thanks. All right. Thank you very much. Thank you.
judges: B. Fletcher, Farris, Wardlaw